IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| ROBERT BRAXTON JARRATT,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF CHATTANOOGA, OFFICER WATSON, OFFICER PATTERSON, OFFICER ABBOTT, OFFICER GREEN, OFFICER HAUGE, OFFICER BARNES, OFFICER BARROW, OFFICER WILLIAMS, OFFICER CHAMBERS, OFFICER AYRES, CHIEF JERRI SUTTON, ERLANGER HEALTH, HCA HEALTHCARE, INC., PARKRIDGE MEDICAL CENTER, INC., ELIJAH WYATT, JOHN CARTER, AHMED IBRAHIM,<br><br>    Defendants. | Case No. 1:26-cv-51<br><br>McDonough/Dumitru |

## COMPLAINT

Plaintiff Robert Braxton Jarratt, III, proceeding *pro se*, hereby files this Complaint for damages following an unlawful seizure, arrest, and detention, showing the Court as follows:

### Introduction

This is a case of a gross violation of one individual's civil rights, and a cautionary tale about how easily an American's civil rights can be taken away based

1

on a single person's false or exaggerated claims. Braxton Jarratt, a well-respected entrepreneur in the tech space, father of two, and responsible citizen with no criminal or mental health record, had his life and livelihood forever damaged by a series of lies and malicious actions by individuals, law enforcement and healthcare institutions. Mr. Jarratt was in the process of breaking up with his estranged girlfriend, who then knowingly misrepresented his state of mind in order to have him illegally detained and hospitalized, even though the state of Tennessee had no evidence that he had broken any law or was legally able to be detained under any mental health claims. Despite openly admitting on bodycam footage that there was no legal reason to detain him, the Chattanooga officers conspired to invent a fictitious narrative in order to have Mr. Jarratt committed to a mental health facility to "save face" after realizing they had over-reacted to a false claim by a disgruntled ex-partner.

Mr. Jarratt was then taken into illegal custody and held at Erlanger hospital, where he was not allowed to contact a lawyer. He was then transferred to the HCA-owned and run Parkridge Medical Center, Inc.'s Parkridge Valley Hospital. There, Mr. Jarratt was held against his will for 9 days, during which time multiple staff members assaulted him, administered drugs without his consent and further violated his civil rights, including keeping him in freezing conditions and refusing any outdoor access for almost the whole stay. Mr. Jarratt was released only after resisting

and refusing demands and pressure from the facility to sign documents affirming the false accusations against him.

This is a flagrant violation of Mr. Jarratt's civil rights and a horrifying picture of both policing and healthcare violations that threatened his very life and livelihood, all stemming from fabrications.

## Jurisdiction and Venue

1. This Court has subject matter jurisdiction because the case arises under the laws of the United States, including but not limited to 42 U.S.C. § 1983 and the U.S. Constitution. *See* 28 U.S.C. § 1331.

2. The Court has supplemental jurisdiction over any related state law claims. *See* 28 U.S.C. § 1367.

3. Venue is proper in the Eastern District of Tennessee because the events giving rise to this Complaint occurred within the Eastern District of Tennessee and at least one Defendant resides in the Eastern District of Tennessee.

## Parties

4. Plaintiff is a resident of New York with the address of 150 E 23rd Street, Apt. 5D, New York, NY 10010.

5. Defendant City of Chattanooga is a municipality that oversees and is responsible for the policies, practices, training, and supervision of its law enforcement officers.

6. Defendant Officer Watson is a law enforcement officer in the Chattanooga Police Department Crisis Unit who was directly involved in the unlawful seizure, arrest, and detention of Plaintiff. Upon information and belief, Officer Watson resides in the Eastern District of Tennessee.

7. Defendant Officer Patterson is a law enforcement officer with the Chattanooga Police Department who was directly involved in the unlawful seizure, arrest, and detention of Plaintiff. Upon information and belief, Officer Patterson resides in the Eastern District of Tennessee.

8. Defendant Officer Jeffrey Abbott is a law enforcement officer with the Chattanooga Police Department who was directly involved in the unlawful seizure, arrest, and detention of Plaintiff. Upon information and belief, Officer Abbott resides in the Eastern District of Tennessee.

9. Defendant Officer Green (# 416) is a law enforcement officer with the Chattanooga Police Department who was directly involved in the unlawful seizure, arrest, and detention of Plaintiff. Upon information and belief, Officer Green resides in the Eastern District of Tennessee.

10. Defendant Officer Hauge (# 458) is a law enforcement officer with the Chattanooga Police Department who was directly involved in the unlawful seizure, arrest, and detention of Plaintiff. Upon information and belief, Officer Hauge resides in the Eastern District of Tennessee.

11. Defendant Officer Barnes (# 674) is a law enforcement officer with the Chattanooga Police Department who was directly involved in the unlawful seizure, arrest, and detention of Plaintiff. Upon information and belief, Officer Barnes resides in the Eastern District of Tennessee.

12. Defendant Officer Barrow (# 142) is a law enforcement officer with the Chattanooga Police Department who was directly involved in the unlawful seizure, arrest, and detention of Plaintiff. Upon information and belief, Officer Barrow resides in the Eastern District of Tennessee.

13. Defendant Officer Williams is a law enforcement officer with the Chattanooga Police Department who was directly involved in the unlawful seizure, arrest, and detention of Plaintiff. Upon information and belief, Officer Williams resides in the Eastern District of Tennessee.

14. Defendant Officer Chambers is a law enforcement officer with the Chattanooga Police Department who was directly involved in the unlawful seizure, arrest, and detention of Plaintiff. Upon information and belief, Officer Chambers resides in the Eastern District of Tennessee.

15. Defendant Officer N. Ayres is a law enforcement officer with the Chattanooga Police Department who was directly involved in the unlawful seizure, arrest, and detention of Plaintiff. Upon information and belief, Officer Ayers resides in the Eastern District of Tennessee.

16. Defendant Jerri Sutton is the Chief of Police for the City of Chattanooga, and she oversees, designs, and implements law enforcement policies, practices, and customs that led to the unlawful seizure, arrest, and detention of Plaintiff. Upon information and belief, Chief Sutton resides in the Eastern District of Tennessee.

17. Defendant Phil Noblett is the City Attorney of Chattanooga, and he oversees, designs, and implements law enforcement policies, practices, and customs that led to the unlawful seizure, arrest, and detention of Plaintiff. Upon information and belief, Attorney Noblett resides in the Eastern District of Tennessee.

18. Erlanger Health is a Tennessee non-profit corporation with its principal place of business at 975 E 3rd Street, Chattanooga, Tennessee 37403. It may be served through its registered agent National Registered Agents, Inc. at 300 Montvue Road, Knoxville, Tennessee 37919-5546.

19. HCA Healthcare, Inc. is a Delaware for-profit corporation with its principal place of business at 1 Park Plaza, Nashville, TN 37203-6527. It may be served through its registered agent C T Corporation System, located at 300 Montvue Road, Knoxville, Tennessee 37919-5546.

20. Parkridge Medical Center, Inc. is a Tennessee for-profit corporation with its principal office address at 1 Park Plaza, Nashville, TN 37203-6527. It may

be served through its registered agent C T Corporation System at 300 Montvue Road, Knoxville, Tennessee 37919-5546.

21. Elijah Wyatt is a physician affiliated with Erlanger who participated in the wrongful detention of Plaintiff. Upon information and belief, he is a resident of Tennessee.

22. Ahmed Ibrahim is a physician affiliated with Erlanger who participated in the wrongful detention of Plaintiff. Upon information and belief, he is a resident of Tennessee.

23. John Carter is a physician affiliated with Parkridge who participated in the wrongful detention of Plaintiff. Upon information and belief, he is a resident of Tennessee.

## General Allegations

24. This case involves the illegal seizure and detention of Plaintiff by officers from the Chattanooga Police Department. All officers listed in Paragraphs 6-15 participated in the illegal seizure and detention of Plaintiff in some material capacity, and therefore are defined as the "Officers" in the following Paragraphs.

25. On February 18, 2025, Plaintiff was stopped by Officers after receiving a "tip" from a person who has no familial or marital relationship to Plaintiff, maliciously and falsely claiming he was experiencing a mental break.

26. During the stop, the Officers admitted that there was no apparent basis to detain Plaintiff.

27. Because there was no basis to detain Plaintiff, the Officers discussed and decided to manufacture a basis to detain Plaintiff by fabricating that Plaintiff was mentally unstable.

28. Contrary to the Officers' fabrication, Plaintiff remained calm, cooperative, and lucid at all relevant times.

29. The Officers seized Plaintiff and took him to Erlanger Health System Emergency Room ("Erlanger"), where he continued to be unlawfully detained without appearing before a judicial officer.

30. While detained at Erlanger, Plaintiff was forcibly administered medication without his consent, without examination by a physician, without a court order, and without judicial review.

31. Through a "telehealth" visit, Defendant Dr. Elijah Wyatt perpetuated the fabricated and false basis to involuntarily commit Plaintiff to a psychiatric ward without Plaintiff's consent.

32. Erlanger subsequently transferred Plaintiff to the custody of HCA Healthcare, Inc.-owned Parkridge Medical Center, Inc.'s Parkridge Valley Hospital ("Parkridge"), where he continued to be involuntarily committed in the psychiatric ward without judicial review or court order.

33. Plaintiff was held at Parkridge for nine days without any court hearing, judicial review, or access to legal counsel.

34. While detained at Parkridge, Plaintiff was physically assaulted by hospital staff under the auspices of healthcare.

35. Parkridge's staff, including Defendant Dr. John Carter and Defendant Dr. Ahmed Ibrahim, continued to fabricate bases to hold Plaintiff in Parkridge's custody without permitting Plaintiff to appear before a judicial officer.

36. Plaintiff was denied without any meaningful opportunity to contest these false allegations, obtain judicial review of his continued detention, or even speak to an attorney.

37. After nine days, Plaintiff was released on February 27, 2025 without ever going before a judge to review the detention and without any follow-up support.

38. Plaintiff's experience of the unlawful seizure was extraordinary and caused Plaintiff mental anguish, lost income, reputational harm, medical injury, and pain and suffering.

39. Plaintiff's unlawful seizure was extraordinarily disruptive to Plaintiff's livelihood, well-being, and business.

40. Plaintiff has suffered damages as a result of the Defendants' violation of his constitutional rights and tortious conduct.

## Causes of Action

### Count I – Municipal Liability for Illegal Seizure in Violation of U.S. Constitution

41. Plaintiff realleges Paragraphs 1 through 40 as if fully set forth herein.

42. Defendant Officers were following Chattanooga's policies, customs, and practices when they arrested and detained Plaintiff without reasonable suspicion, probable cause, a warrant, or any other justification.

43. Chattanooga's law enforcement policies, customs, and practices are set by Defendant Police Chief Sutton and City Attorney Phil Noblet, who are liable for the constitutional violations resulting from such policies, customs, and practices.

44. Plaintiff's harm is a direct result of Chattanooga's policies, customs, and practices.

45. Chattanooga's law enforcement policies, customs, and practices resulted in Officers taking action to seize Plaintiff without a legal or constitutional basis to do so, instead relying solely on a malicious and false "tip" from a person with no familial or marital relationship to Plaintiff.

46. Chattanooga has a practice of using mental health holds to detain persons while precluding that person from accessing judicial resources or review.

47. Upon information and belief, Chattanooga is engaged in a partnership with Erlanger, HCA, Parkridge, and other healthcare systems that improperly

enables those healthcare systems to illegally detain persons without due process under the guise of a mental health hold.

48. Chattanooga, Sutton, and Noblet are liable to Plaintiff for unlawful seizure as a result of Chattanooga's municipal policies, practices, and procedures.

**Count II – Illegal Seizure and Detention in Violation of the U.S. Constitution**

49. Plaintiff realleges Paragraphs 1 through 48 as if fully set forth herein.

50. Defendant Officers arrested and detained Plaintiff without reasonable suspicion, probable cause, a warrant, or any other justification.

51. Despite the lack of reasonable suspicion, probable cause, a warrant, or any other justification, Defendant Officers arrested and seized Plaintiff in violation of his rights under the U.S. Constitution.

52. Defendants Erlanger, HCA, and Parkridge, as well as their staff physicians Defendants Wyatt, Carter, and Ibrahim, acted under color of state law to continue the unlawful seizure and detention of Plaintiff while precluding him from accessing judicial review or legal resources.

53. The illegal seizure lasted until February 27, 2025, when Plaintiff was finally released from custody without ever being afforded an opportunity to appear before a judicial officer.

54. Defendant Officers are liable to Plaintiff for damages resulting from illegal seizure.

## Count III – Deprivation of Liberty Without Due Process

55.    Plaintiff realleges Paragraphs 1 through 54 as if fully set forth herein.

56.    Defendant Officers seized and transported Plaintiff for involuntary psychiatric detention without probable cause, a warrant, or lawful justification.

57.    After Plaintiff was taken into custody, Defendants Erlanger, HCA, Parkridge, and their affiliated physicians and staff knowingly accepted custody of Plaintiff and continued his involuntary detention without affording him constitutionally required due process protections.

58.    During this period of confinement, Plaintiff was forcibly administered medication without his consent, without a court order, without medical necessity, and without affording Plaintiff any procedural protections to contest such treatment.

59.    Defendants failed to provide Plaintiff with any meaningful opportunity to challenge his detention, commitment, forced medication, or continued confinement.

60.    At all relevant times, Defendants knew or should have known that detaining and medicating Plaintiff without judicial review, court authorization, or procedural safeguards violated clearly established constitutional rights.

61.    As a direct and proximate result of Defendants' actions, Plaintiff was deprived of his liberty without due process of law and suffered damages including

emotional distress, loss of freedom, reputational harm, physical injury, and economic loss.

62. Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for compensatory damages, punitive damages (where applicable), and all other relief allowed by law.

### Count IV – False Imprisonment Under Tennessee Law

63. Plaintiff realleges Paragraphs 1 through 62 as if fully set forth herein.

64. Defendant Officers fabricated a basis to detain and imprison Plaintiff through civil commitment after falsely arresting him.

65. Erlanger, Parkridge, and their respective healthcare providers fabricated false reasons to keep Plaintiff committed within their custody without due process.

66. Erlanger, HCA, Parkridge, and their respective healthcare providers kept Plaintiff committed within their custody for nine days without affording Plaintiff an opportunity to appear before a judicial officer.

67. Defendants are liable to Plaintiff for false imprisonment.

### Count IV - Conspiracy

68. Plaintiff realleges Paragraphs 1 through 67 as if fully set forth herein.

69. Defendants acted jointly and in concert under color of state law to deprive Plaintiff of his constitutional rights.

70. Defendants acted in concert to violate Plaintiff's rights under the guise of a mental health hold without lawful justification or required procedural protections.

71. Defendants are jointly and severally liable to Plaintiff for all damages resulting from their unlawful conspiracy and joint action, including compensatory damages, punitive damages, costs, and all other relief allowed by law.

## Jury Demand

Plaintiff demands that this case be heard before a jury on all triable issues.

WHEREFORE, Plaintiff Robert Braxton Jarratt, III respectfully requests that the Court:

a. Enter judgment against the Defendants;

b. Award compensatory damages and punitive damages; and

c. Award any other relief that the Court deems just.

*[Signature on following page.]*

Respectfully submitted this 27th day of February, 2026.

_____
R. Braxton Jarratt

*Pro se*

150 E 23rd Street, Apt. 5D
New York, NY 10010
bjarratt@gmail.com